## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DYSON, INC. and DYSON TECHNOLOGY LIMITED,<br><br>   *Plaintiffs*,<br><br> v.<br><br>SHARKNINJA, INC., SHARKNINJA OPERATING LLC, SHARKNINJA SALES COMPANY, OMACHRON ALPHA INC., and OMACHRON INTELLECTUAL PROPERTY INC.,<br><br>   *Defendants*. | Case No. 24-12373<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Dyson, Inc. and Dyson Technology Limited (collectively, "Dyson") file this Complaint seeking relief for patent infringement by SharkNinja, Inc., SharkNinja Operating LLC, and SharkNinja Sales Company (collectively, "SharkNinja"), Omachron Alpha Inc. ("Omachron Alpha"), and Omachron Intellectual Property Inc. ("Omachron IP"). Omachron Alpha and Omachron IP are hereinafter collectively referred to as Omachron. SharkNinja and Omachron together are herein collectively referred to as Defendants. Dyson states and alleges the following:

## NATURE OF THE ACTION

1. This is an action under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.*, for infringement by Defendants of one or more claims of U.S. Patent Nos. 9,021,655; 10,292,556; and 10,786,127 (collectively referred to as the "Patents-in-Suit").

2. Plaintiffs seek judgment that Defendants have infringed, and continue to infringe, the Patent-in-Suit arising out of Defendants' commercialization of vacuums in the United States.

## PARTIES

3. Plaintiff Dyson, Inc. is an Illinois corporation with its principal place of business at 1330 W. Fulton Street, 5th Floor, Chicago, Illinois, 60607.

4. Plaintiff Dyson Technology Limited is a private limited company organized and existing under the laws of England and Wales, with its principal place of business at Tetbury Hill, Malmesbury SN16, 0RP, United Kingdom.

5. On information and belief, Defendant SharkNinja Operating LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, Massachusetts 02494.

6. On information and belief, Defendant SharkNinja Sales Company is a Delaware Corporation organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, Massachusetts 02494.

7.     On information and belief, Defendant SharkNinja Inc. is a corporation organized and existing under the laws of the Cayman Islands located at PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands.

8.     On information and belief, Defendant Omachron Alpha Inc. is an Ontario company, having a principal place of business at 9 King Lane, P.O. Box 130, Hampton, Ontario, LOB IJO, Canada.

9.     On information and belief, Defendant Omachron Intellectual Property Inc. is an Ontario company, having a principal place of business at 9 King Lane, P.O. Box 130, Hampton, Ontario, LOB IJO, Canada.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

11.    This Court has personal jurisdiction over Defendants. SharkNinja Operating LLC, SharkNinja Sales Company, Omachron Alpha Inc. and Omachron Intellectual Property Inc. voluntarily filed the 1:23-cv-12372-ADB case in this District in which Dyson sought relief for the infringement of the patents asserted in this Complaint as Counterclaims. SharkNinja Operating LLC, SharkNinja Sales Company, SharkNinja Inc., Omachron Alpha Inc. and Omachron Intellectual Property Inc. have waived any claim that the Court lacks personal jurisdiction. Defendants SharkNinja Operating LLC and SharkNinja Sales Company have principal places of business in this District. On information and belief, each of the Defendants has conducted and is conducting substantial business in this District, both generally and with respect to the allegations in this Complaint. Further, on information and belief, each of the Defendants has committed and continues to commit acts of patent infringement in this District giving rise to Dyson's infringement claims, including making, having made, using, selling, and/or offering to sell in this District, and/or

- 2 -

importing into this District the accused products, either directly or through at least one of its wholly owned subsidiaries or agents, and/or inducing others to commit acts of patent infringement in this District.

12.     According to Defendants, "[o]ver 750 SharkNinja employees are located at its Needham headquarters, including development, product development, sales, finance, operations, marketing, product management, legal, and executive personnel." *SharkNinja Operating LLC v. Dyson, Inc.*, No. 1:23-cv-11277 (D. Mass), Dkt. 57 at 3. Also, according to Defendants, SharkNinja employees Ross Richardson, Neil Shah, Adam Quigley, Danielle Lessing, Julien Levesque, Richard Mathias, John Freese, David Jalbert, Paul Grandstand work on the design, engineering, sales, marketing, or finances related to SharkNinja vacuums out of SharkNinja's Needham headquarters. *Id.* at 4.

13.     Further, SharkNinja Operating LLC, SharkNinja Sales Company, and SharkNinja Inc. sell and/or offer to sell the accused products in this District. For example, on information and belief, the accused products are purchased by and delivered to consumers in this District by placing orders on www.sharkclean.com. *See* https://www.sharkclean.com/products/shark-vertex-prolightweight-cordless-stick-vacuum-with-duoclean-powerfins-zidIZ662H; https://www.sharkclean.com/products/shark-vertex-pro-lightweight-cordless-stick-vacuum-with-duoclean-powerfins-zidIZ662H. Similarly, SharkNinja Inc.'s website, https://sharkninja.com/, directs consumers to "Shop Our Brands," which takes consumers to https://sharkninja.com/shopnow/. This page similarly encourages consumers to "Explore & Shop," and by selecting the American flag button, consumers are directed to www.sharkclean.com where they can purchase the accused products, as noted above. Further, for example, on information and belief, consumers can purchase the accused products online or in

person from retailers in this District, and likewise pick up the accused products in person from those retailers in this District. As one example, the accused products can be purchased and picked up in person from Best Buy in Dedham, MA at 700 Providence Hwy, Dedham, MA 02026. https://stores.bestbuy.com/ma/dedham/700-providence-hwy-436.html; https://www.bestbuy.com/site/shark-stratos-multiflex-cordless-stick-vacuum-with-clean-senseiq-and-odor-neutralizer-duoclean-powerfins-hairpro-ash-purple/6514613.p?skuId=6514613; https://www.bestbuy.com/site/shark-vertex-cordless-stick-vacuum-with-multiflex-duoclean-powerfins-self-cleaning-brushroll-blue/6421820.p?skuId=6421820. Therefore, SharkNinja Operating LLC, SharkNinja Sales Company, SharkNinja Inc. sell and/or offer to the accused products to consumers in this District directly and through the stream of commerce.

14. With respect to Omachron Alpha Inc. and Omachron Intellectual Property Inc., according to Defendants, "Omachron employs numerous personnel… including Wayne Conrad, David Peterson, and Nicole Murphy [who] have been instrumental in developing SharkNinja vacuum products." *SharkNinja Operating LLC v. Dyson, Inc.*, No. 1:23-cv-11277 (D. Mass), Dkt. 57 at 6. According to Defendants, SharkNinja and Omachron have worked jointly to develop SharkNinja's vacuums, including in this District:

> For over a decade, the development of SharkNinja's vacuums has been—and continues to be—a joint effort between Omachron and SharkNinja. Mr. Conrad and Mr. Peterson have traveled to SharkNinja's Needham headquarters to collaborate with SharkNinja engineers and product developers about four to six times a year for day-long meetings. The SharkNinja and Omachron teams brainstorm, evaluate, and review prototypes, images and drawings of new designs together. In addition to the frequent in-person collaboration between SharkNinja and Omachron in Needham, SharkNinja's Needham-based engineers collaborate closely with Omachron over phone and video, often on a near-daily basis during periods of product development. SharkNinja is not merely a passive licensee as Dyson seems to suggest—SharkNinja and Omachron are tightly bound partners in product development and jointly chose to bring suit in Massachusetts, where their joint product development using Omachron's patented technology has been centered for over a decade.

*Id.* at 6-7 (internal citations omitted).

15.     On information and belief, including the admissions of Defendants provided above, Omachron Alpha Inc. and Omachron Intellectual Property Inc. worked jointly with SharkNinja Operating LLC, SharkNinja Sales Company, SharkNinja Inc. to develop and manufacture the accused products in this District, knowing the accused products would be sold to consumers in this District directly by SharkNinja Operating LLC, SharkNinja Sales Company, SharkNinja Inc. or through the stream of commerce.

16.     Alternatively, SharkNinja Inc., Omachron Alpha Inc. and Omachron Intellectual Property Inc. are subject to jurisdiction in the United States, and specifically in Massachusetts, pursuant to Fed. R. Civ. P. 4(k)(2). On information and belief, including the admissions of Defendants provided above, SharkNinja Inc., Omachron Alpha Inc. and Omachron Intellectual Property Inc. have contacts with the United States that include at least making, using, offering to sell, and/or selling the accused products throughout the United States, including Massachusetts and this District.

17.     Thus, each of Defendants has sufficient minimum contacts with the District of Massachusetts such that they are subject to specific personal jurisdiction for this Complaint. Further, the exercise of personal jurisdiction based on these repeated and highly pertinent contacts does not offend traditional notions of fairness and substantial justice.

18.     Venue is proper as to Defendants SharkNinja Operating LLC, SharkNinja Sales Company, and SharkNinja Inc. at least under 28 U.S.C. §§ 1391 and 1400(b) because each entity has principal places of business in this District. Further, on information and belief, each of the Defendants has conducted and is conducting substantial business in this District, both generally and with respect to the allegations in this Complaint. As described above, on information and belief, each of Defendants has committed and continues to commit acts of patent infringement in

this District giving rise to Dyson's claims, including making, having made, using, selling, and/or offering to sell in this Judicial District, and/or importing into this District the accused products, either directly or through at least one of its wholly owned subsidiaries or agents, and/or inducing others to commit acts of patent infringement in this District.

19.     Venue is proper as to SharkNinja, Inc., Omachron Alpha, Inc., and Omachron Intellectual Property Inc. at least under 28 U.S.C. § 1391(c)(3) in that they are foreign corporations or the agents of a foreign corporation not residing in any United States Judicial District, which may be sued in any Judicial District.

### THE ACCUSED VERTEX AND STRATOS CORDLESS VACUUMS

20.     On information and belief, Defendants make, use, offer for sale, sell, and/or import the Shark Vertex and Stratos Cordless Vacuum cleaners, as shown in the images below:



21.     On information and belief, and as shown above, the Vertex and Stratos Cordless Vacuum cleaners are available for purchase in the United States, and in this District.

22.     On information and belief, the Vertex and Stratos Cordless Vacuum cleaners incorporate the DuoClean PowerFins cleaner head, which is designed to use airflow and cleaning head geometry to pick up debris in the same manner as described in Dyson's U.S. Patent Nos. 10,292,556; 10,786,127; and 9,021,655.

23.     Rather than developing its own technology, Defendants incorporated Dyson's patented technology into their vacuums. For example, Defendants tout that the DuoClean PowerFins cleaning head allows users to "pick up more dirt, debris, and hair in every pass," which are the very benefits provided by the patents Dyson asserts here.



## COUNT ONE: INFRINGEMENT OF U.S. PATENT NO. 9,021,655

24.     This Count is brought by Dyson.

25.     Dyson restates and incorporates by reference the allegations made in Paragraphs 1 through 23 of the Amended Complaint above.

26.     U.S. Patent No. 9,021,655 ("'655 Patent"), titled "VACUUM CLEANING APPLIANCE," issued on May 5, 2015. A true and correct copy of the '655 Patent is attached as Exhibit 1.

27.     Dyson Technology Limited owns all rights, title, and interest in and to the '655 Patent and has the right to sue and recover for past, present, and future infringement.

28.     Dyson, Inc. is the exclusive U.S. distributor of Dyson vacuum cleaners and parts in the United States.

29.     Upon information and belief, Defendants have infringed, and will continue to infringe, one or more claims of the '655 Patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States certain vacuum cleaners, for example the Shark Vertex and Stratos Cordless vacuum cleaners ("the '655 Accused Products").

30.     Each of the Defendants are liable for infringement of the '655 Patent. According to Defendants, "Omachron employs numerous personnel… including Wayne Conrad, David Peterson, and Nicole Murphy [who] have been instrumental in developing SharkNinja vacuum products." *SharkNinja Operating LLC v. Dyson, Inc.*, No. 1:23-cv-11277 (D. Mass), Dkt. 57  at 6. According to Defendants, SharkNinja and Omachron have worked jointly to develop SharkNinja's vacuums, including in this District:

> For over a decade, the development of SharkNinja's vacuums has been—and continues to be—a joint effort between Omachron and SharkNinja. Mr. Conrad and Mr. Peterson have traveled to SharkNinja's Needham headquarters to collaborate with SharkNinja engineers and product developers about four to six times a year for day-long meetings. The SharkNinja and Omachron teams brainstorm, evaluate, and review prototypes, images and drawings of new designs together. In addition to the frequent in-person collaboration between SharkNinja and Omachron in Needham, SharkNinja's Needham-based engineers collaborate closely with Omachron over phone and video, often on a near-daily basis during periods of product development. SharkNinja is not merely a passive licensee as Dyson seems to suggest—SharkNinja and Omachron are tightly bound partners in product development and jointly chose to bring suit in Massachusetts, where their joint product development using Omachron's patented technology has been centered for over a decade.

*Id.* at 6-7 (internal citations omitted).

31.     Exhibits 2-3 include charts comparing claim 1 of the '655 Patent to exemplary Shark Vertex and Stratos Cordless vacuum cleaners. As set forth in these charts, the '655 Accused Products practice, in whole or in material part, the technology claimed in the '655 Patent.

Accordingly, the '655 Accused Products infringe at least claim 1 of the '655 Patent. The '655 Accused Products are non-limiting examples identified based on publicly available information, and Dyson reserves the right to identify additional infringing activities, products, and services on the basis of information obtained, for example, during discovery.

32.     Upon information and belief, Defendants knew that Dyson had patents covering vacuums based on its conduct monitoring patents, including patents of its competitors such as Dyson, and investigating and assessing potential infringement of those patents, and either learned of the '655 Patent or subjectively believed there was a high probability that Dyson has patents covering features of vacuum products but took deliberate actions to avoid learning of that fact and which features were patented. Further, Defendants knew of the '655 Patent because it is cited by the following U.S. patents assigned to SharkNinja Operating, LLC: 10,702,108; 11,202,542; 11,278,171; 11,647,881; and 11,759,069. Thus, Defendants' knowledge of and intention to infringe the '655 Patent is evidenced by Exhibits 2-3, which establish the striking similarities between the '655 Patent and the '655 Accused Products. Despite knowing of the '655 Patent or being willfully blind to the '655 Patent, Defendants continued to make, use, sell, and offer to sell infringing products.

33.     Upon information and belief, Defendants, with knowledge of the '655 Patent, and without authority, have actively induced and continue to actively induce infringement by end-users of at least one claim of the '655 Patent, under 35 U.S.C. § 271(b), by intentionally inducing the use, importation, offer for sale, and/or sale of the '655 Accused Products, intending to encourage, and in fact encouraging, end-users to directly infringe the '655 Patent. Defendants actively induced infringement by, inter alia, publishing manuals and promotional literature describing and instructing in the operation of the '655 Accused Products and by offering support and technical

assistance to its customers who purchase the '655 Accused Products. See, e.g., https://support.sharkclean.com/hc/en-us/sections/4407128350482-IZ600-Series; https://support.sharkclean.com/hc/en-us/sections/5227474863900-IZ800-Series. Defendants have actual knowledge of the existence of the '655 Patent since not later than the date of filing of this Complaint.

34.     Upon information and belief, Defendants contributorily infringe the '655 Patent through their sale and offers to sell within the United States and/or importation into the United States of the '655 Accused Products and components such as spare and replacement parts of the '655 Accused Products, constituting a material part of the invention of the '655 Patent, knowing the same to be especially made or especially adapted for use in infringement of the '655 Patent, and not staple articles or commodities of commerce suitable for substantial non-infringing uses. Additionally, due to the specific designs of the '655 Accused Products, components thereof such as spare and replacement parts do not have any substantial noninfringing uses. Accordingly, in violation of 35 U.S.C. § 271(c), Defendants are contributing to the direct infringement of the '655 Patent by at least their customers and/or end users of the '655 Accused Products. The customers and/or end users of the '655 Accused Products directly infringe the '655 Patent by making or using the '655 Accused Products without authority.

35.     To the extent applicable, Dyson has complied with 35 U.S.C. § 287(a) with respect to the '655 Patent.

36.     Dyson has been and continues to be damaged by Defendants' infringement of the '655 Patent. The injury to Dyson is irreparable and will continue unless and until Defendants are enjoined from further infringement.

37.     Due to Defendants' willful and deliberate infringement, the Court should award Dyson up to treble damages under 35 U.S.C. § 284 for infringement of the '655 Patent.

38.     This case is exceptional, and Dyson is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## COUNT TWO: INFRINGEMENT OF U.S. PATENT NO. 10,292,556

39.     This Count is brought by Dyson.

40.     Dyson restates and incorporates by reference the allegations made in Paragraphs 1 through 38 of the Amended Complaint above.

41.     U.S. Patent No. 10,292,556 ("'556 Patent"), titled "CLEANER HEAD FOR A VACUUM CLEANER," issued on May 21, 2019. A true and correct copy of the '556 Patent is attached as Exhibit 4.

42.     Dyson Technology Limited owns all rights, title, and interest in and to the '556 Patent and has the right to sue and recover for past, present, and future infringement.

43.     Dyson, Inc. is the exclusive U.S. distributor of Dyson vacuum cleaners and parts in the United States.

44.     Upon information and belief, Defendants have infringed, and will continue to infringe, one or more claims of the '556 Patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States certain vacuum cleaners, for example and without limitation, the Shark Vertex and Stratos Cordless vacuum cleaners ("the '556 Accused Products").

45.     Each of the Defendants are liable for infringement of the '556 Patent. According to Defendants, "Omachron employs numerous personnel … including Wayne Conrad, David Peterson, and Nicole Murphy [who] have been instrumental in developing SharkNinja vacuum products." *SharkNinja Operating LLC v. Dyson, Inc.*, No. 1:23-cv-11277 (D. Mass), Dkt. 57  at 6.

According to Defendants, SharkNinja and Omachron have worked jointly to develop SharkNinja's vacuums, including in this District:

> For over a decade, the development of SharkNinja's vacuums has been—and continues to be—a joint effort between Omachron and SharkNinja. Mr. Conrad and Mr. Peterson have traveled to SharkNinja's Needham headquarters to collaborate with SharkNinja engineers and product developers about four to six times a year for day-long meetings. The SharkNinja and Omachron teams brainstorm, evaluate, and review prototypes, images and drawings of new designs together. In addition to the frequent in-person collaboration between SharkNinja and Omachron in Needham, SharkNinja's Needham-based engineers collaborate closely with Omachron over phone and video, often on a near-daily basis during periods of product development. SharkNinja is not merely a passive licensee as Dyson seems to suggest—SharkNinja and Omachron are tightly bound partners in product development and jointly chose to bring suit in Massachusetts, where their joint product development using Omachron's patented technology has been centered for over a decade.

*Id.* at 6-7 (internal citations omitted).

46.     Exhibits 5-6 include charts comparing claim 1 of the '556 Patent to exemplary Shark Vertex and Stratos vacuum cleaners. As set forth in these charts, the '556 Accused Products practice, in whole or in material part, the technology claimed in the '556 Patent. Accordingly, the '556 Accused Products infringe at least claim 1 of the '556 Patent. The '556 Accused Products are non-limiting examples identified based on publicly available information, and Dyson reserves the right to identify additional infringing activities, products, and services on the basis of information obtained, for example, during discovery.

47.     Upon information and belief, Defendants knew that Dyson had patents covering vacuums based on its conduct monitoring patents, including patents of its competitors such as Dyson, and investigating and assessing potential infringement of those patents, and either learned of the '556 Patent or subjectively believed there was a high probability that Dyson has patents covering features of vacuum products but took deliberate actions to avoid learning of that fact and which features were patented.

48. Further, Defendants knew of the '556 Patent because the published version of the application that issued as the '556 Patent (US2017/0340180) was cited by SharkNinja Operating LLC's U.S. Patent No. D870406.

49. Further, Defendants knew of the '556 Patent because the published version of the parent application to the '556 Patent (US2016/0183749, the "'749 Publication") was cited by SharkNinja Operating LLC's U.S. Patent Nos. 10,702,108; 11,202,542; 11,278,171; and 11,759,069. The '749 Publication was also cited by SharkNinja's International Publication WO2022/026728. The '749 Publication was also cited during prosecution of Omachron Intellectual Property Inc.'s US Application No. 15/852,269 (published as US2019/0082919A1).

50. Further, the '556 Patent claims priority to PCT/GB2014/052259, which published as WO/2015015167 (the "'167 Publication"). Defendants knew of the '556 Patent because the '167 Publication was cited by the following U.S. patents assigned to SharkNinja Operating LLC: D799,767; D849,345; D853,063; 10,702,108; 10,925,448; 11,202,542; D944,475; D955,115; 11,458,771; 11,647,881; 11,759,069. The '167 Publication was also cited by the following U.S. patents assigned to Omachron Intellectual Property Inc.: 10,722,087; 10,888,205; 10,722,022; 10,765,279; and 10,932,631.

51. Thus, Defendants' knowledge of and intention to infringe the '556 Patent is evidenced by Exhibits 5-6, which establish the striking similarities between the '556 Patent and the '556 Accused Products. Despite knowing of the '556 Patent or being willfully blind to the '556 Patent, Defendants continued to make, use, sell, and offer to sell infringing products.

52. Upon information and belief, Defendants, with knowledge of the '556 Patent, and without authority, have actively induced and continue to actively induce infringement by end-users of at least one claim of the '556 Patent, under 35 U.S.C. § 271(b), by intentionally inducing the

- 13 -

use, importation, offer for sale, and/or sale of the '556 Accused Products, intending to encourage, and in fact encouraging, end-users to directly infringe the '556 Patent. Defendants actively induced infringement by, inter alia, publishing manuals and promotional literature describing and instructing in the operation of the '556 Accused Products and by offering support and technical assistance to its customers who purchase the '556 Accused Products. See, e.g., https://support.sharkclean.com/hc/en-us/sections/4407128350482-                           IZ600-Series; https://support.sharkclean.com/hc/en-us/sections/5227474863900-IZ800-Series. Defendants have actual knowledge of the existence of the '556 Patent since not later than the date of filing of this Complaint.

53.     Upon information and belief, Defendants contributorily infringe the '556 Patent through their sale and offers to sell within the United States and/or importation into the United States of the '556 Accused Products and components such as spare and replacement parts of the '556 Accused Products, constituting a material part of the invention of the '556 Patent, knowing the same to be especially made or especially adapted for use in infringement of the '556 Patent, and not staple articles or commodities of commerce suitable for substantial non-infringing uses. Additionally, due to the specific designs of the '556 Accused Products, components thereof such as spare and replacement parts do not have any substantial noninfringing uses. Accordingly, in violation of 35 U.S.C. § 271(c), Defendants are contributing to the direct infringement of the '556 Patent by at least their customers and/or end users of the '556 Accused Products. The customers and/or end users of the '556 Accused Products directly infringe the '556 Patent by making or using the '556 Accused Products without authority.

54.     To the extent applicable, Dyson has complied with 35 U.S.C. § 287(a) with respect to the '556 Patent.

55.     Dyson has been and continues to be damaged by Defendants' infringement of the '556 Patent. The injury to Dyson is irreparable and will continue unless and until Defendants are enjoined from further infringement.

56.     Due to Defendants' willful and deliberate infringement, the Court should award Dyson up to treble damages under 35 U.S.C. § 284 for infringement of the '556 Patent.

57.     This case is exceptional, and Dyson is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## COUNT THREE: INFRINGEMENT OF U.S. PATENT NO. 10,786,127

58.     This Count is brought by Dyson.

59.     Dyson restates and incorporates by reference the allegations made in Paragraphs 1 through 57 of the Amended Complaint above.

60.     U.S. Patent No. 10,786,127 ("'127 Patent"), titled "CLEANER HEAD FOR A VACUUM CLEANER," issued on September 29, 2020. A true and correct copy of the '127 Patent is attached as Exhibit 7.

61.     Dyson Technology Limited owns all rights, title, and interest in and to the '127 Patent and has the right to sue and recover for past, present, and future infringement.

62.     Dyson, Inc. is the exclusive U.S. distributor of Dyson vacuum cleaners and parts in the United States.

63.     Upon information and belief, Defendants have infringed, and will continue to infringe, one or more claims of the '127 Patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States certain vacuum cleaners, for example and without limitation, the Shark Vertex and Stratos Cordless Vacuum cleaners ("the '127 Accused Products").

64.     Each of the Defendants are liable for infringement of the '127 Patent. According to

Defendants, "Omachron employs numerous personnel… including Wayne Conrad, David

Peterson, and Nicole Murphy [who] have been instrumental in developing SharkNinja vacuum

products." *SharkNinja Operating LLC v. Dyson, Inc.*, No. 1:23-cv-11277 (D. Mass), Dkt. 57 at 6.

According to Defendants, SharkNinja and Omachron have worked jointly to develop SharkNinja's

vacuums, including in this District:

> For over a decade, the development of SharkNinja's vacuums has been—and continues to
> be—a joint effort between Omachron and SharkNinja. Mr. Conrad and Mr. Peterson have
> traveled to SharkNinja's Needham headquarters to collaborate with SharkNinja engineers
> and product developers about four to six times a year for day-long meetings. The
> SharkNinja and Omachron teams brainstorm, evaluate, and review prototypes, images and
> drawings of new designs together. In addition to the frequent in-person collaboration
> between SharkNinja and Omachron in Needham, SharkNinja's Needham-based engineers
> collaborate closely with Omachron over phone and video, often on a near-daily basis
> during periods of product development. SharkNinja is not merely a passive licensee as
> Dyson seems to suggest—SharkNinja and Omachron are tightly bound partners in product
> development and jointly chose to bring suit in Massachusetts, where their joint product
> development using Omachron's patented technology has been centered for over a decade.

*Id.* at 6-7 (internal citations omitted).

65.     Exhibits 8-9 include charts comparing claim 1 of the '127 Patent to exemplary

Shark Vertex and Stratos Cordless vacuum cleaners. As set forth in these charts, the '127 Accused

Products practice, in whole or in material part, the technology claimed in the '127 Patent.

Accordingly, the '127 Accused Products infringe at least claim 1 of the '127 Patent. The '127

Accused Products are non-limiting examples identified based on publicly available information,

and Dyson reserves the right to identify additional infringing activities, products, and services on

the basis of information obtained, for example, during discovery.

66.     Upon information and belief, Defendants knew that Dyson had patents covering

vacuums based on its conduct monitoring patents, including patents of its competitors such as

Dyson, and investigating and assessing potential infringement of those patents, and either learned

of the '127 Patent or subjectively believed there was a high probability that Dyson has patents covering features of vacuum products but took deliberate actions to avoid learning of that fact and which features were patented.

67.    Further, Defendants knew of the '127 Patent because the published version of the parent application to the '127 Patent (US2017/0340180) was cited by SharkNinja Operating LLC's U.S. Patent No. D870406.

68.    Further, Defendants knew of the '127 Patent because the published version of the grandparent application to the '127 Patent (US2016/0183749, the "'749 Publication") was cited by SharkNinja Operating LLC's U.S. Patent Nos. 10,702,108; 11,202,542; 11,278,171; and 11,759,069. The '749 Publication was also cited by SharkNinja's International Publication WO2022/026728. The '749 Publication was also cited during prosecution of Omachron Intellectual Property Inc.'s US Application No. 15/852,269 (published as US2019/0082919A1).

69.    Further, the '127 Patent claims priority to PCT/GB2014/052259, which published as WO/2015015167 (the "'167 Publication"). Defendants knew of the '127 Patent because the '167 Publication was cited by the following U.S. patents assigned to SharkNinja Operating LLC: D799,767; D849,345; D853,063; 10,702,108; 10,925,448; 11,202,542; D944,475; D955,115; 11,458,771; 11,647,881; 11,759,069. The '167 Publication was also cited by the following U.S. patents assigned to Omachron Intellectual Property Inc.: 10,722,087; 10,888,205; 10,722,022; 10,765,279; and 10,932,631.

70.    Thus, Defendants' knowledge of and intention to infringe the '127 Patent is evidenced by Exhibits 8-9, which establish the striking similarities between the '127 Patent and the '127 Accused Products. Despite knowing of the '127 Patent or being willfully blind to the '127 Patent, Defendants continued to make, use, sell, and offer to sell infringing products.

71.     Upon information and belief, Defendants, with knowledge of the '127 Patent, and without authority, have actively induced and continue to actively induce infringement by end-users of at least one claim of the '127 Patent, under 35 U.S.C. § 271(b), by intentionally inducing the use, importation, offer for sale, and/or sale of the '127 Accused Products, intending to encourage, and in fact encouraging, end-users to directly infringe the '127 Patent. Defendants actively induced infringement by, inter alia, publishing manuals and promotional literature describing and instructing in the operation of the '127 Accused Products and by offering support and technical assistance to its customers who purchase the '127 Accused Products. See, e.g., https://support.sharkclean.com/hc/en-us/sections/4407128350482-IZ600-Series; https://support.sharkclean.com/hc/en-us/sections/5227474863900-IZ800-Series. Defendants have actual knowledge of the existence of the '127 Patent since not later than the date of filing of this Complaint.

72.     Upon information and belief, Defendants contributorily infringe the '127 Patent through their sale and offers to sell within the United States and/or importation into the United States of the '127 Accused Products and components such as spare and replacement parts of the '127 Accused Products, constituting a material part of the invention of the '127 Patent, knowing the same to be especially made or especially adapted for use in infringement of the '127 Patent, and not staple articles or commodities of commerce suitable for substantial non-infringing uses. Additionally, due to the specific designs of the '127 Accused Products, components thereof such as spare and replacement parts do not have any substantial noninfringing uses. Accordingly, in violation of 35 U.S.C. § 271(c), Defendants are contributing to the direct infringement of the '127 Patent by at least their customers and/or end users of the '127 Accused Products. The customers

- 18 -

and/or end users of the '127 Accused Products directly infringe the '127 Patent by making or using the '127 Accused Products without authority.

73.    To the extent applicable, Dyson has complied with 35 U.S.C. § 287(a) with respect to the '127 Patent.

74.    Dyson has been and continues to be damaged by Defendants' infringement of the '127 Patent. The injury to Dyson is irreparable and will continue unless and until Defendants are enjoined from further infringement.

75.    Due to Defendants' willful and deliberate infringement, the Court should award Dyson up to treble damages under 35 U.S.C. § 284 for infringement of the '127 Patent.

76.    This case is exceptional, and Dyson is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Dyson requests the following relief:

1.    A judgment declaring that Defendants have infringed and continue to infringe one or more claims of U.S. Patent Nos. 9,021,655; 10,292,556; and 10,786,127 under 35 U.S.C. §§ 271(a), (b), (c) and/or (f);

2.    A permanent injunction of Defendants' infringing acts;

3.    An award of all damages sustained by Dyson as a result of Defendants' infringing activities which is no less than a reasonable royalty, together with prejudgment interest;

4.    An award of enhanced damages pursuant to 28 U.S.C. § 284;

5.    An order finding that this case is an exceptional case under 35 U.S.C. § 285 and awarding Dyson its reasonable attorneys' fees, expenses, and costs in connection with this action;

6.    Any other equitable and legal relief that this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Civil L.R. 38-1, Dyson

hereby demands a trial by jury on all issues so triable in this Complaint.

DATED: September 16, 2024                        Respectfully submitted,

                                                 /s/ Kristina R. Cary
                                                 Kristina R. Cary (BBO #688759)
                                                 **KIRKLAND & ELLIS LLP**
                                                 200 Clarendon Street
                                                 Boston, MA 02116
                                                 Telephone: 617-385-7500
                                                 Facsimile: 617-385-7501
                                                 kristina.cary@kirkland.com

                                                 Bryan S. Hales, P.C. (pro hac vice motion
                                                 forthcoming)
                                                 Jay Emerick (pro hac vice motion
                                                 forthcoming)
                                                 **KIRKLAND & ELLIS LLP**
                                                 333 West Wolf Point Plaza
                                                 Chicago, IL 60654
                                                 Telephone: 312-862-2000
                                                 Facsimile: 312-862-2200
                                                 bryan.hales@kirkland.com
                                                 jay.emerick@kirkland.com


                                                 Matt Hershkowitz (pro hac vice motion
                                                 forthcoming)
                                                 **KIRKLAND & ELLIS LLP**
                                                 601 Lexington Avenue
                                                 New York, NY 10022
                                                 Telephone:  212-446-4800
                                                 Facsimile:  212-446-4900
                                                 matt.hershkowitz@kirkland.com

                                                 *Attorneys for Plaintiffs*